UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Gary R. Wescott,
    Debtor

Case No.: 03-37637-svk
(Chapter 13)

**MEMORANDUM OPINION**

    This case has the stuff of great drama: conflict and redemption. It also answers an important question: Can a debtor use chapter 13 of the Bankruptcy Code to save a homestead from foreclosure after the sheriff's sale has been held but before the sale is confirmed by the state court? In *Colon v. Option One Mortgage*, the Seventh Circuit Court of Appeals held that an Illinois debtor could *not* cure a mortgage default in a Chapter 13 case filed after the foreclosure sale. 319 F.3d 912 (7th Cir. 2003). The Debtor in this case, Gary Wescott, argues that *Colon* must be limited to Illinois foreclosures, but the foreclosing creditor, Cendant Mortgage Corporation ("Cendant"), disagrees, pointing out the substantial similarities between Illinois and Wisconsin foreclosure law as described by the Seventh Circuit.

    The facts are undisputed. Cendant holds a mortgage on the Debtor's personal residence. The Debtor defaulted on the monthly payments of the mortgage, and, in accordance with the mortgage documents, Cendant declared the entire balance of the mortgage debt immediately due and payable and commenced a foreclosure action in state court. The court entered judgment of foreclosure in the amount of $125,697.95. After a six-month redemption period, Cendant purchased the property for $134,167.17 at a properly conducted sheriff's sale. Before the foreclosure sale could be confirmed by the state court, the Debtor filed a chapter 13 petition commencing this case. The automatic stay of § 362 of the Bankruptcy Code prevented the confirmation of the sale.

    In his chapter 13 plan, the Debtor proposed to resume making regular monthly payments to Cendant on the mortgage, and to pay the pre-petition arrearage (all of the unpaid monthly payments, fees and costs due to Cendant that arose prior to bankruptcy) through the Chapter 13 trustee. In other words, the Debtor's plan de-accelerated the debt to Cendant, and divided it into pre-petition arrearage to be paid through the plan, and post-petition payments to be paid by the Debtor directly to Cendant. While Cendant concedes that the Debtor's plan could appropriately provide this treatment if the Debtor filed bankruptcy prior to the foreclosure sale, once the sale had been held, Cendant contends that the Debtor no longer could use chapter 13 to cure the mortgage default and reinstate the mortgage.

    The statutory basis for the Debtor's proposed treatment of Cendant's mortgage claim is §1322(c)(1) of the Bankruptcy Code, which reads in pertinent part:

> [A] default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . .

Initially, Cendant argues that "cure" as used in §1322(c)(1) does not include de-acceleration of the mortgage debt and reinstatement of the regular mortgage payments as the plan proposes here. Cendant contends that the Debtor has no greater rights than provided by the mortgage contract and state law, and points out that those rights are limited to redeeming the property from the foreclosure judgment by paying the amount of the judgment in full.

However, *In re Clark*, refutes this argument. 738 F.2d 869 (7th Cir. 1984). In *Clark*, the debtor's chapter 13 plan proposed to de-accelerate and reinstate a personal residence mortgage after a foreclosure judgment had been entered by a Wisconsin state court. The mortgage creditor objected, contending, among other arguments, that the de-acceleration and reinstatement of the mortgage debt was an impermissible modification of the claim under Bankruptcy Code §1322(b)(2). That section allows a debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . ." The *Clark* court held that "De-acceleration, therefore, is not a form of modification banned by (b)(2) but rather is a permissible and necessary concomitant of the power to cure defaults." 738 F.2d at 872. Moreover, the Seventh Circuit in *Clark* rejected an argument similar to Cendant's, that the judgment of foreclosure limited the debtor to redeeming the property by paying the judgment in full. The court noted that in Wisconsin, a foreclosure judgment does nothing but "judicially confirm the acceleration . . . [and] adds nothing of consequence as far as § 1322(b) is concerned." *Id.* at 874.

Contrary to Cendant's arguments, whether the Debtor is allowed to cure defaults in a Chapter 13 plan by de-acceleration of the debt or is required to redeem by paying the entire amount of the judgment in full, is not governed by the contract or relevant nonbankruptcy law. *Capital Realty Services, LLC v. Benson (In re Benson)*, 293 B.R. 234, 239 (Bankr. N.D. Ariz. 2003) ("It is not at all unusual for the Bankruptcy Code to disregard state law cure rights, because the Bankruptcy Code frequently provides federal cure rights that do not exist under state law, and may exist notwithstanding state law."). Bankruptcy Code §1322(c)(1) allows the debtor to "cure" defaults, and, according to *Clark*, the right to cure means the right to de-accelerate and reinstate the mortgage.

*Clark* decided that a mortgage debt that had been declared fully due and payable and indeed evidenced by a judgment of foreclosure, could be de-accelerated in a confirmed Chapter 13 plan, but did not address whether de-acceleration was possible after the mortgaged property was sold at sheriff's sale.[1] *Colon* held that under Illinois law, the right to de-accelerate ended

---

[1] *See In re Brown*, 249 B.R.193, 197 (Bankr. N.D. Ill. 2000) (addressing land contracts and noting the right to cure cannot last indefinitely; at some point in time sufficient action is taken so that the right to cure no longer is available).

with the foreclosure sale, and did not extend beyond that sale to the confirmation hearing. Are Illinois and Wisconsin foreclosure law sufficiently similar to compel the same conclusion here?

According to Cendant, the description of Illinois foreclosure procedures in *Colon* sounds familiar:

> The Illinois Mortgage Foreclosure Act sets forth a multi-step process, culminating in a hearing after the property is purchased in the sheriff's sale. More precisely, the Illinois statute requires that, after the sheriff's sale, there must be a hearing before the state court. That court must approve the sale unless it determines that the sale is flawed in one of four ways . . . If the court approves the sale, the purchaser is permitted to exchange the certificate of sale issued at the foreclosure sale for a deed that conveys title.

*Colon,* 319 F.3d at 915 (citations omitted). Cendant correctly points out that Wisconsin's foreclosure procedure, set forth in Chapter 846 of the Wisconsin Statutes, has several steps, including the foreclosure judgment, sheriff's sale and a confirmation hearing following the sale. At the confirmation hearing, the state court will confirm the sale absent a procedural or substantive flaw. Assuming the sale is confirmed, a deed is issued to the purchaser. However, under *Colon*, the operative comparison for §1322(c)(1) purposes is not how the sale process is structured or whether there is a confirmation hearing to finalize the sale, but rather the duration of the debtor's redemption rights. The court reached this result after analyzing the meaning and legislative history of §1322(c)(1).

Section 1322(c)(1) allows the debtor to cure the default on a homestead mortgage in a chapter 13 plan "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." Both sides in *Colon* argued that the statute supported their position. The mortgagee argued, like Cendant, that the statute would have used words like "completed" or "transfer of the deed" rather than "conducted" if Congress meant any more than the sheriff's auction of the property. The debtor argued that the provision meant that state law defines the completion of the foreclosure sale. The Seventh Circuit Court of Appeals found the statute ambiguous and "with great caution" examined the legislative history to determine its meaning. *Id.* at 917. After reviewing that history and respected bankruptcy treatises, the court held that the right to cure a personal residence mortgage default in a chapter 13 plan ends with the *later of* the foreclosure sale or the expiration of the debtor's right to redeem the property under state law.[2]

---

[2]Section 1322(c)(1) was enacted by Congress in response to *In re Roach*, 824 F.2d 1370 (3d Cir. 1987). *Roach* held that a debtor's right to cure ended at the entry of the foreclosure judgment which, under applicable state law, occurred prior to the foreclosure sale. 824 F.2d at 1378-79. Section 1322(c)(1) was enacted to "*extend* the debtor's right to cure *at least* up until the foreclosure sale was held, even if state law terminated that cure right earlier." *Benson,* 293 B.R. at 239 (emphasis in original) (citing Keith M. Lundin, *Chapter 13 Bankruptcy* § 130.1 at 130-10 through 130-11 [3d ed. 2002]).

3

Despite language in some Illinois cases that a foreclosure sale was not final or complete until confirmation, the court in *Colon* determined that the debtor's *rights of redemption* expired prior to or upon the sale. Illinois law provides for statutory and equitable rights of redemption, but the equitable right of redemption only lasts "until such time as there is a foreclosure sale." *Id.* The statutory right of redemption for Illinois personal residences is (1) seven months from the date of service of the complaint or submission to the court's jurisdiction; or (2) three months from the date of entry of a judgment of foreclosure. Accordingly, whether a statutory right of redemption exists depends on the date of the foreclosure sale. However, 735 Ill. Comp. Stat. 5/15-1507(b) provides that a judicial sale can only be held upon expiration of all statutory redemption rights. "Given this language it is likely that, in most cases, the mortgagor's statutory right to redeem or reinstate will expire before the foreclosure sale occurs." *Colon,* 319 F.3d at 920. The Seventh Circuit concluded that under Illinois law, the debtor's rights of redemption expired upon the foreclosure sale, if not sooner. "However, because § 1322(c)(1) of the Bankruptcy Code provides a statutorily protected right to cure at least until the foreclosure sale, the Bankruptcy Code gives the debtor more protection than Illinois requires." *Id.* at 920-21.

As noted above, the sale and confirmation hearing procedures in Wisconsin and Illinois appear similar, but the operative inquiry is whether the redemption rights are the same. If Wisconsin debtors lose their redemption rights before or at the foreclosure sale, *Colon* is precisely on point, Cendant wins, and the Debtor cannot take advantage of de-acceleration and reinstatement under Bankruptcy Code §1322(c)(1). However, if Wisconsin law, unlike Illinois law, "provides anything like an absolute right to cure a default up until the time of the confirmation hearing," the Debtor's plan can be confirmed over Cendant's objection. *Colon,* 319 F.3d at 920.

In Wisconsin, the redemption period depends on the type of property being foreclosed and whether the property has been abandoned. *See* Wis. Stat. §§ 846.10, 846.101, 846.102, 846.103. Owner-occupied single family residences have a 12-month redemption period from the date of the foreclosure judgment under Wis. Stat. § 846.10(2), but if the mortgage so provides, and the mortgagee waives any deficiency judgment, the period can be reduced to six months. Wis. Stat. § 846.101.

Section 846.13 governs "Redemption from and Satisfaction of Judgment," and may suggest that the redemption rights expire upon the sheriff's sale:

> The mortgagor, the mortgagor's heirs, personal representatives or assigns may redeem the mortgaged premises at any time *before the sale* by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment . . .

(emphasis supplied).

However, Wis. Stat. § 846.17 clarifies that the redemption rights continue until the sale is confirmed:

4

> Upon any such sale being made the sheriff or referee making the same, on compliance with its terms, shall make and execute to the purchaser, the purchaser's assigns or personal representatives, a deed of the premises sold . . . which deed, *upon confirmation of such sale*, shall vest in the purchaser, the purchaser's assigns or personal representatives, all the right, title and interest of the mortgagor . . . in the premises sold and shall be a bar to all claim, equity or redemption therein, of and against the parties to such action . . .

(emphasis supplied). Read together, these two statutes establish that Wisconsin debtors retain the right to redeem property at any time prior to sale, and that sale occurs upon confirmation by the court. Only confirmation vests title in the purchaser and extinguishes the mortgagor's right to redeem.

This interpretation has been followed by Wisconsin courts since at least 1908. In *Gerhardt v. Ellis*, the Wisconsin Supreme Court construed the meaning of "sale" in the predecessor to §§ 846.13 and 846.17. 134 Wis. 191, 114 N.W. 495 (1908). In *Gerhardt*, property had been sold at foreclosure sale, but the sale had not been confirmed, and the mortgagee's heir was attempting to exercise redemption rights. Section 3169 of the Wisconsin Statutes of 1898 provided that the deed issued to the purchaser:

> upon the confirmation of such sale, shall vest in the purchaser all the right, title and interest of the mortgagor, his heirs, personal representatives and assigns in and to the premises sold and shall be a bar to all claim, right or equity of redemption therein, of and against the parties to such action . . .

The language of the statute construed in *Gerhardt* is identical to that of the present § 846.17. Construing that language, the Supreme Court of Wisconsin held: "And it is equally clear that the right of redemption is not barred until confirmation of the sale." 134 Wis. at 196, 114 N.W. at 496.

The *Gerhardt* redemption rule continues to be followed in this state. As recently as 1998, the Wisconsin Supreme Court, citing *Gerhardt,* stated: "We recognize that, generally, a mortgagor may redeem the property until a foreclosure sale is confirmed." *GMAC Mortgage Corp. of Pa. v. Gisvold*, 215 Wis. 2d 459, 484 n.14, 572 N.W.2d 466 (Wis. 1998).[3] And, in *Hobl v. Lord*, the Court of Appeals noted that,

> Hobl does not argue that Lord's redemption is too late because it was made after the sheriff's sale. Hobl concedes that 'sale' under § 846.13, Stats., means the confirmation of the sale.

---

[3] In *Gisvold*, a case involving the exercise of redemption rights and multiple bankruptcies, the Court of Appeals upheld a redemption because it occurred prior to confirmation, citing *Gerhardt.* 206 Wis. 2d 397, 403, 557 N.W.2d 826 (Wis. Ct. App. 1996). But the Wisconsin Supreme Court reversed, finding that the mortgagors had stipulated to an earlier redemption period. 215 Wis. 2d at 475.

5

157 Wis. 2d 13, 16, 458 N.W.2d 536, 537 (Wis. Ct. App. 1990), *rev'd on other grounds, Farm Credit Bank of St. Paul v. Lord,* 162 Wis. 2d 226, 470 N.W.2d 265 (1991). The Court of Appeals in *Hobl* cited *Gerhardt* as support for this construction of the statutes. *Id.*

*Gerhardt, Gisvold* and *Hobl* are not like the Illinois decisions distinguished in *Colon* as "analyzing the statutorily prescribed situations that require the denial of the foreclosure sale." *Colon*, 319 F.2d at 919. *Gerhardt* was decided exactly in the context of whether the redemption rights expired at the foreclosure sale or upon confirmation of the sale by the court. *Gisvold* and *Hobl* directly address the redemption (as opposed to the finality of the sale) issue, and reaffirm *Gerhardt's* holding that the redemption period expires on confirmation of the sale, not upon the sheriff's sale itself. *See also In the matter of Lynch*, 12 B.R. 533, 534-35 (Bankr. W.D. Wis. 1981) (citing *Gerhardt*); *In re Karis*, 208 B.R. 913, 916 (Bankr. W.D. Wis. 1997) (citing *Lynch*).

It is apparent that Wisconsin law is materially different from Illinois law on the expiration of the mortgagor's right to redeem property from foreclosure. Wisconsin debtors may exercise their redemption rights until the sheriff's sale is confirmed by the state court. Accordingly, under *Colon*, since the Debtor can redeem after the foreclosure sale, the Debtor can cure his defaults utilizing § 1322(c)(1) of the Bankruptcy Code. It also follows that under *Clark*, this cure can include the de-acceleration of the mortgage debt and reinstatement of the regular payments. For the Debtor, at least, this drama has a happy ending.

A separate Order will be entered overruling Cendant's objection to confirmation of the Plan.

Dated: April 30, 2004

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge